UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

UNITED STATES OF AMERICA,

Plaintiff,

v.

NATHAN REARDON,

Defendant.

Criminal No. 1:21-cr-00061-LEW

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

COMES NOW, Nathan Reardon, Defendant, proceeding pro se, and respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and 20-month sentence imposed on November 2, 2022. Defendant alleges that constitutional violations, including ineffective assistance of counsel, breach of plea agreement, prosecutorial misconduct, actual innocence, and a constructive amendment of the indictment, render his conviction and sentence unlawful. In support thereof, Defendant states as follows:

**SUMMARY**

Defendant pled guilty to bank fraud (18 U.S.C. § 1344) for a $59,145 Paycheck Protection Program (PPP) loan obtained for his legitimate business, Global Disruptive Technologies (GDT), based on a projected payroll sanctioned by TD Bank staff (Affidavits, Exhibits J, K). The government mischaracterized this lawful loan as fraudulent due to a minor adjustment, indicted Defendant prematurely, coerced his plea through detention and misrepresentations, and misconstrued his good-faith efforts—50–100 bank contacts (Exhibit M), business growth (Exhibit L), and routine spending—as criminal conduct. With $356,508 in available funds, including $206,508 in private loans and a $150,000 settlement (Exhibits A, B through B-3, and S), plus an additional $5,000 to $7,000 per month in recurring rental income from the Howland apartment complex, reflecting sustained financial solvency during the loan period including private loans detailed in Exhibits B through B-3 (Exhibits A, B, B-1, and loans from Suman Korrapati as detailed in Exhibit S) and a $2 million borrowing capacity (Exhibit N), Defendant lacked intent to defraud. Ineffective assistance of counsel and prosecutorial misconduct, including a breached plea agreement and selective prosecution, compounded this injustice. Defendant seeks an evidentiary hearing, withdrawal of his plea, or vacatur of his conviction and sentence.

GROUNDS FOR RELIEF

**1. Ineffective Assistance of Counsel (Sixth Amendment)**

Claim: Counsel, Hunter J. Tzovarras, provided ineffective assistance by failing to:
 Plaintiff's ineffective assistance of counsel claim is strengthened by defense counsel's failure to object during the bail revocation hearing, where the presiding judge declared Plaintiff a 'danger to society' for actions he did not commit—namely, applying for COVID-related relief funds. In fact, the tenant had applied, and Plaintiff, as landlord, only provided verification. Plaintiff attempted to clarify the facts during the hearing, but the judge silenced him and the defense failed to preserve the record. This silencing and the government's mid-hearing expansion of charges without notice are additional examples of malicious prosecution and procedural misconduct.

(a) Advise withdrawal of the plea when the government sought 24 months at sentencing (Doc. 166, pp. 16–22), contrary to the promised 12-month-and-1-day recommendation (Doc. 133);

(b) Object to the plea breach or challenge the reasonableness of the 20-month sentence and self-employment ban;

(c) Contest the premature May 2021 indictment, issued before the loan's due date (October 2020–May 2022, per Exhibit U);

(d) Argue GDT's legitimacy, TD Bank's guidance (Exhibits J, K), 50–100 bank contacts (Exhibit M), and $2 million capacity (Exhibit N) to refute the fraud label;

(e) Present $306,508 in funds (Exhibits A, B, B-1, and loans from Suman Korrapati as detailed in Exhibit S) and $10,000 in donations (Exhibit C) to counter insolvency claims;

(f) Challenge redacted donations (Exhibit C) and cherry-picked spending (Exhibits D–F);

(g) Oppose the 9-month detention (Doc. 90, pp. 58–65) for a false violation;

(h) Object when Judge Nivison silenced Defendant (Doc. 90, p. 69);

(i) Raise collateral consequences in the first appeal (Case No. 22-1486);

(j) Expedite the second appeal (No. 22-1883) or challenge delays.

(k) Failed to secure or formally submit a request to amend supervised release conditions to allow self-employment, despite multiple written requests from Defendant via text and email. Attorney Tzovarras acknowledged the need to seek

permission from Probation Officer Mitchell Oswald and agreed to contact him, but never followed through with a formal motion or filing. Defendant was later incarcerated for a technical violation tied to self-employment—a direct result of this failure. This omission was not only professionally negligent, but causally connected to the alleged violation and subsequent harm, thereby meeting the Strickland standard for prejudice.

Facts: On multiple occasions between July and August 2023, Defendant contacted counsel asking for assistance in securing permission to work for himself or his father, as required by the conditions of supervised release. Counsel agreed to reach out to Probation Officer Oswald and indicated it would help the judge approve the change if Oswald agreed. Despite this acknowledgment, no formal motion or amendment was filed, leaving Defendant exposed. In August 2023, Defendant was alleged to have violated supervised release conditions—one of the cited reasons being self-employment. Had counsel acted on Defendant's written request, this preventable violation could have been avoided.

Facts: Counsel overlooked GDT's real payroll (Exhibit H), bank instructions for projected 941s (Exhibits J, I), and Defendant's diligence (Exhibit M), allowing a civil matter to be criminalized. The government's plea breach (Doc. 166) and financial distortions went unchallenged, forcing a 20-month sentence Defendant would have contested at trial with competent counsel.

Legal Basis: Strickland v. Washington, 466 U.S. 668 (1984).

**2. Breached Plea Agreement (Due Process)**

Claim: The government promised a 12-month-and-1-day recommendation (Doc. 133), then sought 24 months (Doc. 166, pp. 16–22), securing 20 months (p. 49), and shifted the victim to the SBA, rendering the plea involuntary.

Facts: The plea, signed July 2, 2022, relied on the 12-month promise. The breach and victim switch (Doc. 166, pp. 19–20), combined with detention and misrepresentations, coerced Defendant.

Legal Basis: Santobello v. New York, 404 U.S. 257 (1971).

### 3. Prosecutorial Misconduct (Due Process)

Claim: Assistant U.S. Attorney (AUSA) Lizotte:
Additionally, Plaintiff's ineffective assistance of counsel claim is strengthened by defense counsel's failure to object during the bail revocation hearing, where the presiding judge declared Plaintiff a 'danger to society' for actions he did not commit—namely, applying for COVID-related relief funds. In fact, the tenant had applied, and Plaintiff, as landlord, only provided verification. Plaintiff attempted to clarify the facts during the hearing, but the judge silenced him and the defense failed to preserve the record. This silencing and the government's mid-hearing expansion of charges without notice are additional examples of malicious prosecution and procedural misconduct.

(a) Coerced Defendant with 8-month detention (Doc. 90);

(b) Misrepresented the 12-month-and-1-day recommendation, then sought 24 months (Doc. 166, pp. 16–22);

(c) Indicted Defendant in May 2021 before the loan was due (Exhibit U);

(d) Expended significant resources prosecuting a $59,145 legitimate loan (Exhibits H, N)—1/34th of Defendant's $2 million capacity—for GDT's real payroll, unlike larger PPP cases resolved civilly;

(e) Mischaracterized 50–100 bank contacts (Exhibit M) as fraud;

(f) Mislabeled a bank-approved 941 projection (Exhibits J, I) as fraud;

(g) Portrayed GDT's growth (Exhibit L) as deceit;

(h) Mischaracterized church donations (Exhibit C);

(i) Redacted $10,000 donations (Exhibit C);

(j) Cherry-picked spending—$400 dog expense (vs. 2019 bills, Exhibit D), kids' toys (13-year pattern, Exhibit E), $400 boots (routine gift, Exhibit F);

(k) Relaince on guidance from TD Bank

(l) Refused pre-indictment repayment offers, suggesting malicious intent;

(m) Delayed appeal No. 22-1883;

(n) Ignored $306,508 in funds (Exhibits A, B, B-1, and loans from Suman Korrapati as detailed in Exhibit S).

Selective Prosecution and Disparate Treatment: The government criminally prosecuted Defendant for a $59,145 loan tied to a real business with real employees, while Jacob Hennie settled civilly for nearly $230,000 in alleged fraud (News Center Maine, Jan. 2024). This disparate treatment reflects vindictive enforcement.

Facts: Lizotte misconstrued Defendant's diligence (Exhibit M), growth (Exhibit L), and bank-guided loan (Exhibits H, J, K, N) as criminal, suppressed evidence (Exhibits C–F), and pressured Defendant via detention and plea lies.

Legal Basis: Berger v. United States, 295 U.S. 78 (1935); Brady v. Maryland, 373 U.S. 83 (1963).

### 4. Actual Innocence

Claim: Defendant is innocent of bank fraud—no scheme or intent to defraud TD Bank; the loan was legitimate, adjusted per guidance; the SBA bore the risk; no violation occurred.

Facts: GDT was real (Exhibit H), entitled to a PPP loan. TD Bank's Steve instructed a projected 941 (Exhibit J), adjusted later (Exhibit I). Jessica advised including Defendant and his father (Exhibit K); they removed themselves to fund new hires, growing GDT (Exhibit L)—PPP's goal. Defendant made 50–100 bank contacts (Exhibit M) to comply. With $306,508 available (Exhibits A, B, B-1, and loans from Suman Korrapati as detailed in Exhibit S), a $2 million capacity (Exhibit N), and Venmo borrowing (Exhibit S, including $12,008 in loans from Suman Korrapati to Defendant and GDT across 2019–2020), Defendant lacked motive. Additionally, Defendant's father invested tens of thousands of dollars in GDT from 2019 through 2021, as acknowledged by the AUSA in the indictment, though the exact amount is currently unavailable. With this clear amount of borrowing capacity and financial support, why would Defendant risk imprisonment by defrauding the federal government for $59,145? The defendant had never spent a night in jail in his life. He is not a seasoned criminal mastermind, unlike Lizottes malicious portrayals to the courts and the newspapers to ensure Reardon couldn't get a fair trial. The loan was not due at indictment (Exhibit U); donations were not PPP funds (Exhibit C); spending was routine (Exhibits D–F). Private loans from Rick Baker ($73,500, Exhibit B), Dan Corcoran ($21,000, Exhibit B-1), and Benjamin Lawlor ($20,000, Exhibit B-2) supported operations in good faith. Leases pre-dating COVID loans (Exhibit W) show business stability and growth without government help.

**Latent Document Theory Supports Good-Faith Intent**

In further support of Ground 4 (Actual Innocence) and Ground 3 (Prosecutorial Misconduct), Defendant incorporates the legal theory of a "latent document," as defined by tax defense attorney Michael Minns. According to Minns, a latent document refers to a financial or payroll document created for internal, planning, advisory, or third-party use—not formally filed with the IRS—and thus not legally equivalent to a false tax filing or fraud.

In this case, the projected IRS Form 941 submitted to TD Bank and the SBA was a classic latent document. It was produced at the guidance of TD Bank staff (see Affidavits, Exhibits J and K) to reflect anticipated payroll for a pending PPP loan. It was never submitted to the IRS. Instead, the IRS received the actual 941, which reflected post-loan staffing changes and was filed in compliance with federal reporting requirements.

This is a routine and recognized business practice. The existence of both a projected and actual version of Form 941 is not indicative of deceit, but of proper business forecasting and reconciliation.

The prosecution's use of the projected 941 to support an inference of fraud disregards this established distinction. In United States v. Finnerty, 474 F. Supp. 2d 530 (S.D.N.Y. 2007), the court emphasized that misstatements in internal or incomplete reports that are not relied on by victims do not meet the threshold for criminal fraud. Similarly, Minns' writings make clear that a document not filed with the IRS and created under bank direction cannot be construed as a fraudulent IRS submission. There was no perjury, there was no wire fraud, and there was no bank fraud. The only thing that existed in this filing is overzealous and and malicious prosecution for a AUSA trying to make a name for himself on the back of this popular public interest story.

Thus, the government's theory that the projected 941 was part of a criminal scheme is legally and factually defective. Defendant's use of this document aligns with advice received from bank personnel and the structure of the PPP application process itself. This reinforces that:

- There was no willful intent to deceive;
- The loan process was conducted transparently;
- The use of internal projections was reasonable and good-faith.

This argument underscores Defendant's actual innocence, and further demonstrates that the government's criminal theory improperly criminalized lawful, bank-directed behavior that is common in PPP administration.

Legal Basis: Loughrin v. United States, 573 U.S. 351 (2014); Schlup v. Delo, 513 U.S. 298 (1995).

In further support of actual innocence, Defendant emphasizes the following logical and practical points, consistent with the existing record and newly added Exhibits X and Y:

Fraud is characteristically covert, not overt. A person attempting to defraud a federal agency would logically avoid sustained, repeated contact with banks, lawyers, and SBA staff. In contrast, Defendant was in constant contact with 50–100 bankers (Exhibit M), multiple SBA representatives, and TD Bank personnel, actively seeking guidance and clarification. Defendant was not hiding; he was operating transparently and in good faith. He had no intent to commit fraud—he simply did not want to make a mistake. Lizotte spun this maliciously as he did throughout this entire process.

Defendant's business history shows he is no novice. He has successfully run multiple companies with millions in assets and up to 10 separate physical locations at one time. His businesses employed multiple crews across multiple sites, and he managed hundreds of thousands of dollars in renovation budgets. If he intended to defraud the government, he certainly had the intelligence to know not to submit multiple PPP applications with identical payroll figures across separate entities. Such a move would be blatantly foolish, and Defendant is not foolish.

Further corroborating his lack of fraudulent intent, Jencks material provided by the government includes a statement from Kate Malo, a former employee who was terminated and evicted by Defendant, and who harbored animosity toward him at the time. Yet even she stated that the administrative staff routinely filled out applications and brought them to Defendant merely for signature. This supports Defendant's consistent explanation that he relied on staff to handle application preparation, while he finalized and submitted the forms.

Additionally, Exhibit X consists of an email from TD Bank confirming that, when Defendant attempted to log in to check on loan matters, the system notified him that another session was already in progress. He immediately alerted the bank, stating he had never logged in. This anomaly raises serious questions about the unexplained and wildly inaccurate figures in the EIDL loan application—figures Defendant would never have submitted because they were not remotely close to actual sales data. The only plausible explanation is that someone else was logged into the account, leading to this egregious error. Not fraud.

Exhibit Y includes an email from TD Bank representative Jennifer, in which Defendant sought clarification and updates about SBA programs. Jennifer advised that the SBA portal had not yet opened and recommended that he continue checking the bank's website for updates. This email evidences Defendant's efforts to stay informed and comply with a constantly shifting policy landscape. Jessica from TD Bank also explained in a separate conversation that internal SBA guidance was changing by the hour. In that context, Defendant's repeated outreach for clarification was a demonstration of due diligence, not deception.

When TD Bank and the SBA themselves were struggling to understand the rapidly evolving rules, how could a borrower like Defendant be expected to fully comprehend and perfectly navigate every requirement? Defendant did his best to comply in good faith, not fraud.

These facts and exhibits collectively support the conclusion that Defendant lacked fraudulent intent, acted transparently, and followed available guidance from bank officials. This is not a case of deception—it is a case of good-faith effort criminalized after the fact.

### 5. Constructive Amendment: Wrong Victim Theory

This shift is confirmed in the Revocation Report dated September 1, 2023 (Docket No. 179), where the SBA is explicitly identified as the 'victim'—a post-conviction change from the original indictment naming TD Bank. See Exhibit Z.

Claim: The indictment charged bank fraud under 18 U.S.C. § 1344, alleging TD Bank as the victim. At sentencing, the government shifted the victim to the SBA, which is not a financial institution under § 1344, constituting a constructive amendment and a per se Fifth Amendment violation.

Facts: The plea and indictment targeted TD Bank. The government's shift to the SBA altered an essential element. See Stirone v. United States, 361 U.S. 212 (1960); United States v. Keller, 916 F.2d 628 (11th Cir. 1990). In United States v. Wessels (D.N.J. 2024) and United States v. Merritts (D.D.C. 2025), similar PPP indictments were vacated for premature filing and wrong victims.

### 6. Motion to Stay Supervised Release Pending Resolution

Pursuant to Fed. R. Crim. P. 38(d), Defendant moves to stay all supervised release conditions pending this § 2255 motion's outcome. Substantial constitutional issues—constructive amendment, plea breach, ineffective assistance, and actual innocence—challenge the conviction's validity. Supervised release causes irreparable hardship to Defendant, his five minor children and his overburdened, aging parents. This is such a burden on them that it has brought on medical problems as well. Relief is warranted under United States v. DiSomma, 951 F.2d 494 (2d Cir. 1991) and the Court's inherent authority.

### 7. Timeliness

Conviction finalized August 21, 2024 (second appeal, No. 22-1883, ruled May 23, 2024, plus 90-day certiorari). Deadline: August 21, 2025. Filed April 22, 2025, within bounds. Equitable tolling applies due to misconduct (premature indictment, plea breach, evidence suppression) and detention, hindering earlier filing. See Holland v. Florida, 560 U.S. 631 (2010).

### 8. Relief Requested

- An evidentiary hearing on plea breach, ineffective assistance, misconduct, loan legitimacy, and financial evidence (Exhibits A–W);

- Vacatur of the 20-month sentence (Doc. 182) and conviction with prejudice due to constructive amendment, premature prosecution, plea breach, and actual innocence;

- Withdrawal of the plea as involuntary or resentencing/other relief;

- A bar on reprosecution (see below);

- Permission to proceed through the formal PPP loan forgiveness process to determine whether any funds are actually owed;

- Full return of all restitution, fees, and financial penalties paid under the challenged conviction, including amounts withheld or collected by the Bureau of Prisons, Probation, or the Clerk's Office.

- A formal public apology recommended by the Court from the United States Attorney's Office and the presiding judge for the misconduct, unlawful detention, and reputational harm caused by this prosecution.

Defendant requests:

- An evidentiary hearing on plea breach, ineffective assistance, misconduct, loan legitimacy, and financial evidence (Exhibits A–Y);

- Vacatur of the 20-month sentence (Doc. 182) and conviction with prejudice due to constructive amendment, premature prosecution, plea breach, and actual innocence;

- Withdrawal of the plea as involuntary or resentencing/other relief;

- A bar on reprosecution (see below).

## 9. Certification

I, Nathan Reardon, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed April 21st, 2025.

/s/ Nathan Reardon

Nathan Reardon, Pro Se

773 Lower Detroit Rd.

Plymouth, ME 04969

Phone: 207-745-7575

Email: nathan@membershipauto.com


REQUEST TO BAR REPROSECUTION

Defendant requests a bar on reprosecution, grounded in:

1. Double Jeopardy: The constructive amendment (TD Bank to SBA) is a per se violation under Stirone v. United States, 361 U.S. 212 (1960), barring retrial.

2. Actual Innocence: Evidence (Exhibits H, J, K, L, M, N, S, U, V, W) negates intent, warranting dismissal under Schlup v. Delo, 513 U.S. 298 (1995).

3. Prosecutorial Misconduct: Bad-faith actions (e.g., refusing repayment, Exhibit U) support dismissal under Berger v. United States, 295 U.S. 78 (1935).

4. Statute of Limitations: The five-year limit for alternative charges (e.g., 18 U.S.C. §§ 1343, 1001) has nearly expired or expired.

5. Disproportionate Sentencing and Public Interest: Defendant's 20-month sentence for $59,145 contrasts with lesser outcomes for actual frauds (e.g., South Thomaston, $1.3 million, 18 months). Judicial economy favors closure.

6. Precedent: United States v. Merritts and United States v. Wessels vacated similar convictions without reprosecution.

EXHIBITS

- Exhibit A: Settlement Agreement, 2020 ($150,000).

- Exhibit B: Loan confirmation from Rick Baker ($73,500), throughout 2020.

- Exhibit B-1: Loan confirmation from Dan Corcoran ($21,000), through 2022.

- Exhibit B-2: Loan confirmation from Benjamin Lawlor ($20,000).

- Exhibit B-3: Loan confirmation from Arthur Reardon (in excess of $80,000).

- Exhibit C: Discovery showing $10,000 2020 church donations (redacted).

- Exhibit D: 2019 vet bills ($638.10) vs. 2020 $400 dog expense.

- Exhibit E: Pre-post 2020 Amazon purchases.

- Exhibit F: Gifts to father including boots (before/during/after PPP period).

- Exhibit G: Newspaper clippings related to prosecution and arrest coverage.

- Exhibit H: GDT payroll reports (actual employees).

- Exhibit I: Discovery comparing projected vs. actual 941 filings.

- Exhibit J: Affidavit of Nathan Reardon re: Steve's PPP guidance.

- Exhibit K: Affidavit of Nathan Reardon re: Jessica's guidance at TD Bank.

- Exhibit L: GDT newsletter highlighting business growth throughout the year. Not just during Covid.

- Exhibit M: Log of 50–100 contacts (emails/calls) with banks to support PPP compliance.

- Exhibit N: TD Bank statement or confirmation showing $2M lending capacity.

- Exhibit S: Venmo loan and deposit records from 2019–2020 showing borrowing capacity (including $12,008 in loans from Suman Korrapati to Defendant and GDT).

- Exhibit T: SBA procedural notice, TD Bank incentive to push loans.

- Exhibit U: Email from TD Bank showing loan was not due at indictment.

- Exhibit V: PPP forgiveness procedure.

- Exhibit W: Two separate leases entered into early 2020 before COVID loans.

- Exhibit X: Email from TD Bank noting suspicious login conflict during Defendant's access attempt—evidence supporting alternate EIDL submission scenario.

- Exhibit Y: Email correspondence between Defendant and TD Bank's Jennifer, showing SBA uncertainty and Defendant's efforts to follow evolving guidance.


- Exhibit A: Settlement Agreement, 2020 ($150,000).

- Exhibit B: Emails from Rick Baker ($73,500), October–November 2020.

- Exhibit B-1: Loan confirmation from Dan Corcoran ($71,000), 2020–2022.

- Exhibit B-2: Loan agreement or confirmation from Benjamin Lawlor ($20,000).

- Exhibit B-3: Text messages confirming financial transfers to GDT.

- Exhibit C: Discovery showing $10,000 2020 church donations (redacted).

- Exhibit D: 2019 vet bills ($638.10) vs. 2020 $400 dog expense.

- Exhibit E: Pre/post 2020 Amazon purchases.

- Exhibit F: Gifts to father including boots (before/during/after PPP period).
- Exhibit G: Newspaper clippings related to prosecution and arrest coverage.
- Exhibit H: GDT payroll reports (actual employees).
- Exhibit I: Discovery comparing projected vs. actual 941 filings.
- Exhibit J: Affidavit of Nathan Reardon re: Steve's PPP guidance.
- Exhibit K: Affidavit of Nathan Reardon re: Jessica's guidance at TD Bank.
- Exhibit L: GDT newsletter highlighting business growth post-PPP.
- Exhibit M: Log of 50–100 contacts (emails/calls) with banks to support PPP compliance.
- Exhibit N: TD Bank statement or confirmation showing $2M lending capacity.
- Exhibit O: Jack Holstein resignation message (law enforcement interference).
- Exhibit P: Naomi Allen message expressing fear from law enforcement contact.
- Exhibit Q: DOJ release – Alexis Hodges theft of $90,000 with 12-month sentence.
- Exhibit R: News report – Massachusetts' misuse of $2.1B in pandemic funds (no criminal charges).
- Exhibit S: Venmo loan and deposit records from 2019–2020 showing borrowing capacity (including $12,008 in loans from Suman Korrapati to Defendant and GDT).
- Exhibit T: SBA procedural notice, TD Bank incentive to push loans.
- Exhibit U: Email from TD Bank showing loan was not due at indictment.
- Exhibit V: PPP forgiveness procedure.
- Exhibit W: Two separate leases entered into early 2020 before COVID loans.
- Exhibit X: TD Bank login activity showing access mismatch.
- Exhibit Y: Email string regarding projected payroll submission.
- Exhibit Z: Revocation Report (Docket No. 179, filed 09/01/23) listing SBA as victim — post-conviction victim shift.

Exhibits

Certificate of Service;

I hear by certify that a copy of the motion was sent to AUSA Lizotte by USPS.

# Fifth Amendment Violation — Constructive Amendment Requires Vacatur of Conviction

The U.S. Constitution's Fifth Amendment guarantees that a person shall only be prosecuted for offenses returned by a grand jury. A constructive amendment occurs when the government, through evidence, argument, or post-conviction filings, alters an essential element of the charged offense without returning to the grand jury for a superseding indictment.

This legal principle is firmly established in both Supreme Court and First Circuit precedent:

- Stirone v. United States, 361 U.S. 212 (1960):
"After an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."
 The Court held that constructive amendment is a per se violation of the Fifth Amendment requiring reversal.

- United States v. Fisher, 3 F.3d 456 (1st Cir. 1993):
"A constructive amendment… is reversible error per se."

- United States v. Frankhauser, 80 F.3d 641 (1st Cir. 1996):
"The Fifth Amendment guarantees that a defendant will not be tried on charges not made by the grand jury… a constructive amendment violates this right."

- United States v. Comacho, 241 F.3d 124 (1st Cir. 2001):
"A constructive amendment voids the conviction by operation of constitutional law."

Application to Reardon:
Mr. Reardon was indicted for bank fraud under 18 U.S.C. § 1344, with TD Bank named as the victim. Post-conviction, the government shifted the victim to the Small Business Administration (SBA), a materially different entity and not a financial institution under the statute. This post-plea change to a core element of the offense constitutes a constructive amendment. Under the precedents above, this constitutional violation requires vacatur of the conviction.